### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

AMERICAN LIST COUNSEL, INC.

                        Plaintiff,

vs.

ANDREW OSTROY, and BELARDI-OSTROY, LTD.

                        Defendants.

Civil Action No.: 3:12-CV-03350-FLW-DEA

**MOTION DAY: December 17, 2012**

---

### BRIEF IN OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS PLAINTIFF'S SECOND AMNDED COMPLAINT
### PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND (7)

---

**TAYLOR, COLICCHIO & SILVERMAN, LLP**
Attorneys at Law
502 Carnegie Center - Suite 103
Princeton, NJ 08540
(609) 987-0022
Attorneys for Plaintiff,
American List Counsel, Inc.

**Of Counsel**
Philip M. Colicchio, Esq.
**On the Brief**
Philip M. Colicchio, Esq.
Michael J. Robinson IV, Esq.

# TABLE OF CONTENTS

STATEMENT OF FACTS.................................................................................4

LEGAL ARGUMENT....................................................................................8

      A.     THE PROPER FORM FOR THIS SUIT IS A DIRECT ACTION
           BETWEEN THE TWO MEMBERS..................................................9

               1.     THIS SUIT IS APPROPRIATELY PLED AS A DIRECT
                     ACTION BECAUSE THE LLC IS A CLOSELY HELD
                     COMPANY.......................................................................9

               2.     A DIRECT ACTION IS PROPER AS BOTH PARTIES
                     HAVE ALLEGED "SPECIAL INJURY"................................16

      B.     THE COMPANY IS NOT A NECESSARY OR INDISPENSIBLE PARTY
           UNDER FEDERAL RULE OF CIVIL PROCEDURE 19 AND DOES NOT
           NEED TO BE JOINED IN THIS ACTION.......................................17

               1.     THE COMPANY IS NOT A NECESSARY PARTY UNDER
                     FEDERAL RULE OF CIVIL PROCEDURE 19(a)...........................19

                2.     THE COMPANY IS NOT AN INDISPENSIBLE PARTY UNDER
                     FEDERAL RULE OF CIVIL PROCEDURE 19(b)...........................21

CONCLUSION...........................................................................................26

## TABLE OF AUTHORITIES

Cases:

68th Street Apts., Inc. v. Lauricella, 142 N.J. Super. 546 (1976)....................................................10

Baker v. Andover Associates Management Corp., 924 N.Y.S.2d 307 (Westchester County 2009)..........................................................................................................................................25

Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates, 844 F.2d 1050 (3d Cir. 1988).....................................................................................................................................23

Boston Culinary Group, Inc. v. JDK Catering, Inc., 2009 WL 2707587 (M.D.Pa 2009).............21

Brown v. Brown, 323 N.J. Super. 30 (App. Div. 1999).....................................................9, 11, 13

Evans v. Perl, 862 N.Y.S.2d 814 (New York County 2008)..........................................................25

Fine v. New York Community Bank, 939 N.Y.S.2d 740 (Queens County 2011).........................25

HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185 (3d Cir. 1996).......9, 12, 18, 20, 22

Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487 (S.D.N.Y. 2002)........................................21

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (3d Cir. 1993)...............19-20

Ono v. Itoyama, 884 F. Supp. 892 (D.N.J. 1995)....................................................................13-15

Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 (1968).............9, 18, 22

Segal v. Cooper, 856 N.Y.S.2d 12 (1st Dept. 2008)....................................................................25

Strasenburgh v. Straubmuller, 146 N.J. 527 (1996)................................................................16-17

Trademark Retail, Inc. v. Apple Glen Investors, LP, 196 F.R.D. 535 (N.D. Ind. 2000).........13-14

Rules:

Federal Rule of Civil Procedure 19...........................................................................................17-25

## STATEMENT OF FACTS

Plaintiff, American List Counsel, Inc. ("ALC") and Defendant, Belardi-Ostroy, Ltd., ("B-O"), are the only two Members of Belardi/Ostroy ALC, LLC  (the "Company").  Defendant Andrew Ostroy ("Ostroy") is one of the principals of B-O. On December 2, 1997, ALC and B-O formed the Company as a New York limited liability company, adopting both a Member Agreement and an Operating Agreement as its governing documents. The facts underlying this action are set forth in detail in ALC's Second Amended Complaint. The following are material to this application:

1.   The Plaintiff, ALC, has been in business since 1978; it is the most respected privately held data marketing services provider in the data management industry.

2.  Ostroy wanted to begin his own business within the industry, without investing any of the necessary capital or assuming any of the financial risk that accompanies starting a business.

3.  In addition, neither Ostroy nor his partner Donna Belardi maintained the management skills, knowledge, or contacts within the industry or access to the financing necessary to start up a successful data management company.

4.  Ostroy approached ALC with a rough 3-year profit and loss projection for a new business venture that Ostroy wanted to begin with ALC, whereby ALC would provide the funding and take the financial risk of the start-up company, as well as provide management support and contacts within the industry.

5.  In exchange for ALC's full financial backing, Ostroy agreed to devote all of his work efforts towards the Company, and agreed that the Company would utilize ALC for all support services, including back-end support for list research, accounting/invoicing,

credit & collections, personnel administration, computer systems, purchasing, information technology, interactive media and general data processing services, and would have the Company's offices linked to ALC's corporate computer network for order processing and related data/information.

6. Article II of the Member Agreement specifically states that Support Services for the Company will be provided by Member ALC, with consideration for such services being a fixed percentage of the Company's commission income.

7. Article II of the Member Agreement specifically requires that "the general corporate governance of the Company shall coincide and be consistent with that of ALC as a whole."

8. Article II of the Member Agreement specifically provides that "All significant functions of the Company including, but not limited to, business plan development, client negotiations, annual budgets and financial reporting will be accomplished in accordance with ALC's standard practice and be subject to the review and approval of the Board of Directors."

9. Article XII, §12.08 of the Member Agreement states that it can only be amended by a writing executed by all the parties to the Member Agreement.

10. The Company's Operating Agreement, in Section 5.1(a), provides that "all management powers over the business and affairs of the Company shall be exclusively vested in the Board of Directors and, subject to the direction of the Board of Directors [and] the Officers[.]"

11. In 2000, Ostroy requested and was given the titles of "Chairman of the Board" and "Chief Executive Officer" of the Company, after agreeing and acknowledging to Member

ALC and the Board of Directors that these new titles would not confer any additional management authority upon him.

12.   At the Company's December 6, 2011 Board of Directors Meeting, Ostroy, a director on the Board, together with Belardi, also a director on the Board (collectively Member B-O), over the objections of Directors Donn Rappaport and Susan Rappaport (collectively Member ALC) attempted to terminate the support services provision of the Member Agreement as part of an effort to take over the Company and acquire the interests of ALC at a discounted price.

13. During his tenure as the Company's Managing Director and Chief Executive Officer/Chairman of the Board, Ostroy:

- pushed through a change to the Company's name, from "ALC of New York, LLC" to "Belardi/Ostroy ALC, LLC";

- entered into leases on behalf of the Company without Board approval;

- increased his own compensation and  falsified expense payments;

- opened up new bank accounts, without Board approval, in the name of the Company with the only signatory being Ostroy himself;

- submitted personal expenses, including Ostroy's personal attorneys, to the Company despite repeated objections from Member ALC;

- charged personal expenses to the Company's credit card, including family travel and dining expenses as well as expensive tickets to sporting events and theater;

- employed his children and their friends at the Company without informing the Board or Member ALC of their qualifications or the details of their employment; and

- transferred check signing privileges for the Company from ALC to himself without Board approval.

Ostroy committed the foregoing acts, among others, as part of a larger scheme to violate both the Member and Operating Agreements, move the Company's significant functions away from ALC and to acquire ALC's ownership stake at a price well below its actual value. All of these acts were committed to further Ostroy's self dealing plan and to advance his personal gain, and have done direct harm to ALC, the only other member of the Company. Accordingly, ALC brought an action in this court, as required by the forum selection clause in Article XII, §12.03 of the Member Agreement, seeking to enforce the Member and Operating Agreements of the Company, to enjoin Ostroy and Member B-O from further violating those Agreements, to obtain reimbursement for Ostroy's unapproved expenditures, to obtain a declaration that Ostroy's July 10, 2012 termination as Chief Executive Officer and Chairman of the Board of the Company pursuant to a Member vote was proper and legally binding, and for any other such relief as the Court deems just and equitable under the circumstances.

Ostroy filed a purported "derivative action" on behalf of the Company – without seeking or obtaining Board approval- in the Superior Court of New Jersey, Mercer County. The Honorable Darlene Pereksta, J.S.C., properly recognized that the true nature of the suit was not derivative, but was, rather, a suit based upon straight forward disputes between the two Members of the Company, in the nature of a shareholder dispute in a closely-held corporation. Consequently, Judge Pereksta correctly dismissed the New Jersey Superior Court action so that the matters could be decided in the forum chosen by the parties in the Member and Operating Agreements, as required by the terms of those Agreements and pertinent legal authority. Ostroy now moves to dismiss this federal action, in an apparent attempt to avoid federal jurisdiction and

in an effort to compel the Company to fund his litigation expenses in his effort to take over the Company.

## LEGAL ARGUMENT

The claims which exist between ALC, on one hand, and B-O and Ostroy on the other, are properly resolved through the assertion of direct claims litigated in this forum. By this Motion to Dismiss, Ostroy and B-O seek another bite at the apple, hoping to move this litigation to the Superior Court of New Jersey, where they can try to again add the Company as a party and have the Company foot the bill for their attempts to void the support services provision of the Member Agreement and wrest control of the Company. This motion is simply the latest example of Ostroy's continued treatment of the Company as his own personal bank, as detailed in ALC's Second Amended Complaint.  This Court should refuse to enable Ostory to effectuate this sham, and should allow ALC to continue to pursue its remedies through a direct action in this, the forum chosen by the parties in the Company's formational documents and Agreements.

The Company is neither a necessary nor indispensible party under either a factual analysis or under Federal Rule of Civil Procedure 19. Every remedy necessary to resolve the matters in dispute between the two Members is available to the parties in a direct suit, and there is no risk of prejudice to any party or possible duplicative further litigation. The Company has no interest in the outcome of these disputes independent of the interests of its two Members. The Defendants' continued characterization of these claims as derivative, and their insistence that the Company is, therefore, a necessary and indispensible party, thus requiring dismissal of this action under Rule 19, is nothing more than an obvious and disingenuous attempt to avoid litigating these disputes in the proper forum, and to have the claims litigated in a forum and in a manner which would enable B-O and Ostroy to have the Company pay for the legal costs and

fees attendant to their attempts to modify the Member Agreement without Member ALC's

negotiation or consent, and to gain control of the Company.

**A.**    **THE PROPER FORM FOR THIS SUIT IS A DIRECT ACTION BETWEEN THE TWO MEMBERS**

Defendants B-O and Ostory argue that the true nature of this action is derivative, and that

the Company is therefore a necessary and indispensable party to the action, which, in turn,

requires dismissal of the action for nonjoinder of an indispensable party under Federal Rule of

Civil Procedure 19. While a Rule 19 analysis is governed by the provisions of the Rule itself and

federal precedent, the Courts look to state law to determine the true interests of the parties to the

action. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 (1968); HB

General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1192 (3d Cir. 1996). In this case, a

New Jersey State Superior Court has already examined the claims, and correctly found their true

nature to be direct, not derivative, and that, consequently, the Company was not an appropriate

plaintiff to the action. Notably, the analysis involved in determining whether an action is

derivative or direct is very similar to the analysis involved in determining whether a party is

necessary or indispensable under Federal Rule 19.

**1.**    **THIS SUIT IS APPROPRIATELY PLED AS A DIRECT ACTION BECAUSE THE LLC IS A CLOSELY HELD COMPANY**

Because the Company is s closely held business entity, this Court has the discretion to

"treat an action raising derivative claims as a direct action[.]" Brown v. Brown, 323 N.J. Super.

30, 36 (App. Div. 1999) (citation omitted). The actual substance of this matter is the dispute

between the two Members over a significant provision on the Member Agreement (which

formed a substantial part of the basis for the formation of the company and Member ALC's

agreement to fund it through its start-up and struggling first years) as well as a dispute over

control of the Company. The dispute has caused, and continues to cause, direct harm to Member
ALC through the actions of Member B-O, which is controlled by Ostroy. Pleading this action as
a direct action properly reflects the true relationships and nature of the disputes between the
parties to this suit. Pleading the action as a derivative suit would involve the employment of a
structural fiction which would obscure the real basis of this action.

This is, purely and simply, a dispute between two equal Members of a two member LLC,
in which one Member (B-O) seeks to fundamentally and improperly amend the Member
Agreement over the objection of the other Member(ALC), in a continuing effort to gain control
over an asset (the Company). This *direct* effort by Member B-O, controlled by Ostroy, has
*directly* harmed ALC and compromised its rights as a Member under both the Member and
Operating Agreements. B-O's attempt to obscure these plain facts by cloaking its claim as a
derivative action, while treating a key provision of the Member Agreement as if it were simply a
third-party vendor contract which B-O seeks to void in the "best interests of the Company," is a
fictional and manipulative construct. Treating this matter as the direct action that it really is
pierces this fiction and allows for a proper resolution of all of the disputes between the Members,
in the forum agreed upon by both the Company's organizational and governing documents, and
without the Company accruing additional costs in paying the legal fees for Ostroy and B-O, who
are acting in their own best interests, and not in the best interests of the Company independent of
their own interests.

Under New Jersey law, when a closely held company is involved in a lawsuit, traditional
legal analysis given to larger companies is often not appropriate.  68th Street Apts., Inc. v.
Lauricella, 142 N.J. Super. 546, 558 (1976) ("The difficulties which unavoidably arise in
attempting to apply corporate norms to the close corporation have led to the development of

substantial authority permitting departure from these norms and recognition instead of the real

relationships of the principals"). When choosing between a direct and derivative suit, a court

may decide that a direct action is better suited than a derivative action for a specific factual

situation involving a closely held company. Brown, 323 N.J. Super. at 36. The Brown court

followed the approach of §701(d) of the American Law Institute's ("ALI's") Principals of

Corporate Governance: Analysis and Recommendations (1992), which states:

> In the case of a closely held corporation ... the court in its discretion may treat an action
> raising derivative claims as a direct action, exempt it from those restrictions and defenses
> applicable only to derivative actions, and order an individual recovery, if it finds that to
> do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of
> actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii)
> interfere with a fair distribution of the recovery among all interested persons.

Id.

The Brown court further states:

> Comment (e) to § 7.01 recognizes that as to closely-held corporations, "the normal policy
> reasons for requiring a plaintiff to employ the form of the derivative action may not be
> present or will be less weighty, even though the action alleges in substance a corporate
> injury." The comment recognizes that "the concept of a corporate injury that is distinct
> from any injury to the shareholders approaches the fictional in the case of a firm with
> only a handful of shareholders."

Id. at 37.

In a business entity as closely held as the Company here, which has only two Members,

each of whom has two representatives currently making up the complete Board of Directors, B-

O's claims that the harm arising out of these Member disputes is really harm to the Company

truly "approaches the fictional." Id. B-O seeks to nullify a specific provision of one of the

Company's two key organizational documents. A provision that was fully and fairly negotiated

when the Company was formed, and, as detailed in the Second Amended Complaint, formed a

significant basis for Member ALC's agreement to form and fund the Company at all. A

provision that, per the Member Agreement itself, cannot be modified or amended (much less omitted altogether) without a writing executed by all parties to the Member Agreement. A provision without which ALC would never have agreed to fund the start-up of the Company, or to continue to fund the Company through its initial years when it was losing money but when its expenses and employees – including B-O shareholders Ostroy and Belardi – nonetheless had to be paid. Member B-O seeks to void that particular provision of the Member Agreement by trying to color it as a run of the mill third-party vendor contract for paper clips or plastic cups. The fact that this dispute is in reality a direct action between the Members could not be clearer.

In addition to New Jersey state case law, precedent established in the Federal Third Circuit also supports the abandonment of traditional business structures in order to determine the true interests of the parties to a suit. In HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185 (3d Cir. 1996), the Court addressed a matter involving a closely held limited partnership, a business entity form which bears close resemblance to the structure of the Company in this case. In HB General Corp., the Third Circuit held that

> [a] partnership's interests as an entity consist of an aggregation of those interests of each of the individual partners that are relevant to the purpose of the partnership. Thus, at least in certain cases, it is possible that a partnership's interests can be effectively represented in litigation by participation of its partners.

Id. at 1193.

The case at hand is one of those "certain cases" referred to by the Court in HB General Corp. Here, the Company's interests are represented in totality by the interests of the two Members - the two parties in conflict with one another - ALC and B-O. B-O's treatment of the Company as a separate entity, with separate interests, is simply an attempt to mask the fact that the proper parties are already a part of this action and correctly engaged in a direct suit.

B-O's attempt to distinguish <u>Brown v. Brown</u>, 323 N.J. Super. 30 (App.Div. 1999) from this case only succeeds in reinforcing ALC's point that the New Jersey courts no longer base decisions on the nature of suits such as these on the formalities of corporate pleading, but have, rather, adopted the ALI approach detailed above for its flexibility and utility in ensuring that just and equitable considerations are applied when determining whether an action is a direct or derivative claim. The approach taken by the court in <u>Brown</u> (and then by the Superior Court in this case), determined the nature of the suit with a clear focus on equity and fairness. Neither court allowed the legal structures designed for larger companies with distinct interests to prevent the plaintiff from pursuing its remedies in the forum chosen by its shareholders or Members.

B-O also cites to <u>Trademark Retail, Inc. v. Apple Glen Investors, LP</u>, 196 F.R.D. 535, 539 (N.D. Ind. 2000) and <u>Ono v. Itoyama</u>, 884 F. Supp. 892, 895 (D.N.J. 1995) in support of its position that suits between shareholders in closely-held corporations are to be treated as derivative, not direct, in nature. However, neither of the cases cited actually supports B-O's position.

In the portion of the <u>Trademark Retail</u> case cited by B-O as support for its position, the court was NOT stating a finding, or issuing a holding; it was merely reciting the assertions of the defendant in the case; to wit:

> More importantly, defendants assert that an LLC is more like a subchapter S corporation than a limited partnership in that although each is a pass-through organization for income taxation, limited liability companies and S corporations offer limited liability to all their members or shareholders, unlike limited partnerships which leave general partners responsible for all partnership obligations. Further, limited liability companies like S corporations allow all members or shareholders to participate in the management of the entity, whereas management of a limited partnership is committed solely to the general partner. Withal, this action is like that of a derivative claim between two shareholders of a closely held corporation and the rule in such cases is that "[i]f this is a derivative suit, the corporation is an indispensable party."

<u>Trademark Retail</u>, 196 F.R.D. at 539.

The <u>Trademark Retail</u> court DID NOT even subscribe to the defendants' assertion quoted by B-O in its Brief, noting, "[i]f anything can be gleaned from the foregoing, it is that Rule 19 requires examining the specifics to determine whether a party is in fact necessary." <u>Id.</u> Although the <u>Trademark Retail</u> court ultimately found the LLC in that case to be a necessary and indispensible party, that finding was based on an extensive factual analysis of that particular, and very distinct, situation, relying upon completely different cases and legal theories than the those advanced by the Defendants in the case at bar.

B-O similarly misquotes the court in <u>Ono v. Itoyama</u>, 884 F. Supp. 892, 895 (D.N.J. 1995) in an effort to support its position in this matter, indicating in its Brief that the <u>Ono</u> court held that:

> Similarly, Judge Lifland made clear that claims between 50% shareholders of a New York corporation must be brought derivatively:
> [W]here the president is a 50% shareholder and sues the other 50% shareholder, **the action must be brought derivatively**. Indeed, there is ample authority for this proposition.

(Defendant's Brief at p. 25).

Again, the quote in the actual case reads:

> Hence, defendants argue, where the president is a 50% shareholder and sues the other 50% shareholder, the action must be brought derivatively. Indeed, there is ample authority for this proposition.

Id. at 895.

The only thing Judge Lifland was making clear was that the defendants made an argument before the court and offered cases to support their argument. The ultimate holding of the case is narrowly focused on the power of a President in a closely held corporation to bring a suit *on behalf of the corporation*, *with the corporation as a named party.* <u>Id.</u> The court held that the president may have such power based on the existence of certain factors, but, in the <u>Ono</u> case, he

was required to follow the formal structures of a shareholder derivative suit, such as making a demand on the board. Id. at 899.  It should be noted that, although Ostroy and  B-O, the Defendants in the instant matter, argue for the dismissal of this direct suit so that they can seek to reinstate a purported derivative suit in state court, neither ever made the requisite demand on the Board as discussed in the Ono case they cite in their Brief. This again is evidence of the fact that the matters at issue between the parties in this case are direct, not derivative, in nature.

As already acknowledged by the New Jersey Superior Court in dismissing the Defendants' purported derivative action based upon these same disputes, ALC has correctly pled this action as a direct action in this Court, and properly seeks individual recovery under the §701(d) framework. As a direct action, this litigation does not unfairly expose the Company or any possible defendants to a multiplicity of suits. A resolution of all the issues facing the Company and the parties, as is requested in ALC's Second Amended Complaint, will settle any lingering disputes between the parties. There are no creditors that are prejudiced by this direct action. And resolution of this direct action in this Court will not interfere with the fair distribution of recovery between or among the interested persons. The dispute over the support services provision of the Member Agreement is included in ALC's Second Amended Complaint and will be fully addressed and resolved in this case. All parties will be able to receive fair and full resolution of the disputes between them, in the forum they chose when they formed the Company and entered into the controlling Agreements. Consequently, ALC's Second Amended Complaint is properly pled as a direct action by one Member of the Company against the other Member and its controlling shareholder.

### 2.    A DIRECT ACTION IS PROPER AS BOTH PARTIES HAVE ALLEGED "SPECIAL INJURY"

Pleading the current action as a direct action is also proper because both Members are, in reality, alleging "special injury" in this matter.

As B-O notes in its Brief in support of this Motion,  some cases have held that a member or shareholder may bring a direct action when it has suffered a "special injury" unique of any harm done to other members or shareholders or involving a contractual right. Such is clearly the case here. Both the allegations by B-O and the claims by ALC center and are based upon allegations of "special injury". B-O seeks to void a particular provision of the Member Agreement between itself and ALC. Obviously the pursuit of this remedy cannot be argued to be on behalf of both Members of the Company, because, if successful, it harms one of the Members (ALC) and enables the other Member (B-O) to gain additional compensation from, and control over, the Company. Moreover, success in this pursuit would lead to the elimination of the financial consideration that was a major factor in ALC's agreement to fund the Company in its start-up and early growth phases, resulting in additional consideration to one Member – B-O – at the significant expense of the other – ALC. This is the direct opposite of a derivative claim. B-O's allegations of damage resulting from continuation of the support services arrangement with its partner are, in reality, allegations of "special injury" to itself. And, for its part, the damages alleged by ALC as a result of the actions that have been, and continue to be, taken by Ostroy and B-O in their continuing efforts to gain control of the Company are certainly in the nature of "special injury" being visited by one Member, B-O, upon the only other Member, ALC.

Indeed, nearly all of Ostroy and B-O's acts have fallen directly within the type of "special injury" contemplated by Strasenburgh v. Straubmuller, 146 N.J. 527 (1996), the case cited by B-O. As the Court in that case explained:

A special injury exists "where there is a wrong suffered by [a] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote."

Id. at 550.

"To determine whether a complaint states a derivative or an individual cause of action, courts examine the nature of the wrongs alleged in the body of the complaint, not the plaintiff's designation or stated intention." Id. at 551. The disputes between B-O and ALC involve wrongs suffered by one Member and not the other, and further involve the contractual rights of one Member and not the other. The claims on both sides are direct, not derivative, in nature. And both the Member Agreement and the Operating Agreement require such claims to be brought in this Court, which, as a result of the fact that the claims involved are direct, not derivative claims, does have jurisdiction over the matters.

### B. THE COMPANY IS NOT A NECESSARY OR INDISPENSIBLE PARTY UNDER FEDERAL RULE OF CIVIL PROCEDURE 19 AND DOES NOT NEED TO BE JOINED IN THIS ACTION

Because this action is properly pled as a direct action by one Member of the Company against the other Member and its controlling shareholder, for harm caused to the complaining Member and its interests, the Company itself is not a necessary party, and certainly not an indispensable party, to this case, and therefore does not need to be joined in this action.

Federal Rule of Civil Procedure 19 governs decisions as to when a party must be joined to an action because it is necessary or indispensable. The analysis to be made under Rule 19 is a three step process, pursuant to which the Court determines:

(1) whether a party is "necessary" under Rule 19(a);

(2) whether it is feasible for the necessary party to be joined; and,

(3) if it is not feasible to join the necessary party, whether that party is indispensable to the action.

Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102 (1968)

If a party is found to be necessary and indispensable under the Rule, and it is not feasible to join that party (because, for example, joinder would destroy diversity for jurisdictional purposes), the suit must be dismissed. Despite this structured analysis, the true crux of a determination of whether a suit should proceed with or without a party involves "pragmatic considerations."    HB General Corp. 95 F.3d at 1192; see Provident Bank, 390 U.S. at 118, Advisory Committee Notes from 1966 Amendment to FRCP 19.  This is especially true of a Rule 19(b) "indispensible" analysis, where the Supreme Court has said

> The decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.

Provident Bank, 390 U.S. at 118. Rule 19(b) itself states that the court must make its determination on whether the action should proceed in "equity and good conscience."

In this case, a Rule 19 analysis dictates that the Company is neither necessary nor indispensable to this action, and that this action should be allowed to continue in this Court without the Company as a party. B-O and Ostroy are attempting to use the formalities of both pleading and corporate structure to avoid this forum and to have the Company pay their legal fees for trying to inappropriately revise the Member Agreement and gain control of the Company. They seek to do so despite the clear facts that their interests are not those of the Company and its Members at large, but are those of themselves individually, and that the harm that they have alleged (and conversely, the harm that Plaintiff ALC alleges) is unique harm to the interests of the individual Members.

18

As previously discussed in the preceding sections of this Brief, the instant action is properly pled and treated as a direct claim by one Member against the other, and cannot be viewed as a derivative claim under the analyses adopted by the New Jersey state courts, which incorporate the approach to such determinations set forth by the ALI. The considerations in that analysis are much the same as those required by Federal Rule 19. Both look closely at factors like risk of multiplicity of actions, prejudice to creditors, and the fair distribution of recovery amongst interested persons. As such, most, if not all, of the facts and circumstances considered in the dismissal of the state court action brought by B-O and Ostroy have direct application here. But, more importantly, the ALI approach shares the same flexible, pragmatic character that a Rule 19 analysis has. With that character, in the interests of "equity and good conscience," this Court should not find the Company to be a necessary or indispensible party.

### 1. THE COMPANY IS NOT A NECESSARY PARTY UNDER FEDERAL RULE OF CIVIL PROCEDURE 19(a)

Federal Rule of Civil Procedure 19(a) provides:

**(a) Persons Required to Be Joined if Feasible.**

    **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

        **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

        **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

            **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
            **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Courts have traditionally referred to a party that falls under one of these three categories as a "necessary party." See e.g. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (3d Cir. 1993). Here, the Company is by no means a necessary party. Complete relief can be

afforded to B-O, Ostroy, and ALC in this direct action. The Company's "interests" are the same as the Members, and are protected by the claims and counterclaims that have been and will be raised here. Finally, there is no risk to the Company of incurring inconsistent obligations, as all disputes between the parties will be resolved in this action, leaving any future actions involving the Company unrelated to this litigation.

Under Rule 19(a)(1)(A), only the parties already in the suit can be considered when a court is determining whether complete relief can be accorded to the parties. Id. at 405. All three parties to this suit can be accorded complete relief with the legal and equitable remedies available in this Court. ALC has alleged breaches of fiduciary duty and violations of the Member and Operating Agreements, and seeks a declaration that the termination of Ostory was legal and binding. This Court is well within its powers to redress the misdeeds committed by Ostroy and B-O and enjoin them from taking further harmful action towards ALC. Likewise, similar relief is available to Ostroy and B-O should they make such claims. The Court can certainly determine the validity of the Defendants' attempt to terminate and omit the support services provision of that Member Agreement. There is no reason that this Court cannot afford complete relief to all of the current parties to this action.

A party will be considered necessary under Rule 19(a)(1)(B)(i) if its exclusion from the action would impede its ability to protect its interest in the suit. As previously explained in detail, the Company here is simply an aggregation of the interests of the two Members, both of whom are before this court and will be able to fully protect their interests. The Third Circuit has found that, in the context of entities like small partnerships, when all of the partners are before the court and the interests of the partners are nearly indistinguishable from those of the partnership, joinder of the partnership is not necessary. HB General, 95 F.3d 1196. Other courts have applied

this reasoning to LLCs, which share many characteristics with general and limited partnerships. See e.g. Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487 (S.D.N.Y. 2002), Boston Culinary Group, Inc. v. JDK Catering, Inc., 2009 WL 2707587 (M.D.Pa 2009). With all of the Company's interests represented in this action by the Members, those interests will all be protected.

There is no risk of double, multiple, or otherwise inconsistent obligations in this case, as is contemplated by Rule 19(a)(1)(B)(ii). The parties make up the entirety of the Company and all have the ability to receive the full range of remedies they desire. The dispute between the parties will be completely resolved by this litigation. Any future lawsuits involving the Company would have to arise out of a new set of circumstances unrelated to any of the acts that serve as the basis for the claims in this action. The Company faces no risk of future duplicative litigation.

The Company does not fall under any of the three categories listed in Rule 19(a). Therefore, it is not a necessary party and does not need to be joined in this action.

## 2. THE COMPANY IS NOT AN INDISPENSIBLE PARTY UNDER FEDERAL RULE OF CIVIL PROCEDURE 19(b)

Even if the Company is found to be a necessary party to this action, joinder is not feasible, as it would destroy the diversity jurisdiction of this Court. Therefore, the Court must determine whether the Company is an indispensable party and only dismiss the action if it is determined to be so. Federal Rule of Civil Procedure 19(b) provides:

> **(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> > **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> > **(2)** the extent to which any prejudice could be lessened or avoided by:
> > > **(A)** protective provisions in the judgment;
> > > **(B)** shaping the relief; or
> > > **(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and
**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The analysis under Rule 19(b) is a pragmatic one, with consideration given to all of the factors underlying an action, not just those listed in the Rule. Provident Bank, 390 U.S. at 118; HB General, 95 F.3d at 1192. In this case, all of the factors weigh in favor of this action proceeding without the Company as a party, and there is no basis upon which the Court should find, in equity and good conscience, that the Company is an indispensable party to this action.

Rule 19 lists four (4) factors to consider in determining whether a party is indispensable to an action. Here, all four (4) support finding that the Company is not an indispensable party. First, there would be no prejudice to the Company or the parties already in the action if the Company is not joined. As previously discussed in detail, the true dispute in this case is between the Members, with the Company having no separate interests, all remedies available to all parties, and there being no risk of further litigation based on these same circumstances. Second, though there is no risk of prejudice to any party or the Company, this Court has the power to shape its judgment and the relief it affords in order to avoid any perceived prejudice that may arise. Third, the judgment rendered by this Court would be adequate in the absence of the Company. The Company has no separate interests from the parties, and the dispute between the parties will be resolved by the judgment rendered by this Court. The Defendants argument that any judgment in favor of ALC in this case would necessarily have to be rendered against the Company in order to be effective is simply wrong. It is the actions of the other Member and its controlling shareholder that ALC seeks to restrain and enjoin, and it is the improper use, dissipation, and abuse of the Company's assets by the controlling shareholder of the other Member , acting outside the scope of his authority as the Company's Chariman and CEO,  for

which ALC seeks redress. ALC does not seek to restrain, enjoin, or otherwise effect the operations or actions of the Company as it is operated by an officer or director acting within the confines of the Member Agreement and Operating Agreement. There is no reason for ALC to obtain any kind of judgment against the Company itself in these circumctances. ALC needs only to obtain relief and reimbursement from a Member that has been using its position in the Company to further its own self interests, at the expense of the only other Member of the Company. Thus, any judgment affecting both Members will affect the entirety of the Company, and no separate judgment against the Company itself is needed or required.

The fourth factor for consideration under Rule 19 is whether the Plaintiff would have an adequate remedy if the action were dismissed for non-joinder. The state court action filed by Ostroy and B-O was dismissed without prejudice, leaving the Superior Court of New Jersey open to the parties should this Court determine it does not have jurisdiction over this matter. However, the Third Circuit has held that the availability of an alternate forum in state court cannot alone transform a party into an indispensible one. Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates, 844 F.2d 1050, 1055 (3d Cir. 1988). Thus, the possible availability of the Superior Court of New Jersey as a forum is not enough for a dismissal of this action. Moreover, it must be remembered that the Member and Operating Agreements clearly select the United States District Court for the District of New Jersey, not the Superior Court of New Jersey, as the preferred forum for litigation between the parties. Even if a similar action were to be brought in state court, and even if there were similar remedies available there, forcing the matter to be litigated in state court would rob ALC of its right to pursue its remedies in the forum chosen after fair negotiation and contractually agreed upon by the parties in their Member and

Operating Agreements, ignoring part of the consideration exchanged in the founding of the Company. It cannot be equitably said that this leaves an "adequate" remedy for ALC.

In addition to failing to satisfy the Rule 19 factors to be considered when determining the feasibility of joinder under Rule 19(b), other factors strongly favor permitting this action to continue in this Court, without the Company as a party. Dismissing the action and allowing B-O to have these disputes adjudicated in a forum other than the one negotiated, chosen, and agreed to in the Member and Operating Agreements would legitimize B-O's now standard approach to these contracts between the parties; i.e., simply ignoring the Agreements' provisions whenever it suits B-O to do so. Dismissing the action and allowing B-O to have these disputes adjudicated in state court as a derivative claim would not only enable B-O to ignore its contractual obligations and litigate its dispute with its partner in a different forum where it believes it will have an advantage, but also to do so in a manner that it believes will allow it to have the Company foot its bill for its efforts to gut key provisions of the Member Agreement and take control of the Company. Indeed, the Defendants admit as much, blatantly stating in their Brief that, "[a]s the Chief Executive Officer and a Member of the Board, Mr. Ostroy is entitled to full indemnification for his costs in defending this action." (Defendants' Brief, at p. 14). Further, Ostroy has been engaged in a series of email exchanges with ALC Chief Financial Officer Peter DeRosa, who acts in the same capacity for the Company, where he has demanded DeRosa begin accruing $25,000 a month for the payment of legal fees for this action. Ostroy has even gone so far as to threaten DeRosa by saying that he and his partner, Donna Belardi, would hold DeRosa responsible for any harm caused to the Company due to DeRosa's withholding of the accrual. (See Email Exchange between Ostroy and DeRosa, attached to the Certification of Peter DeRosa. as Exhibit 1.)

Ostroy has made these claims despite that fact that, though he claims that this is a "derivative" suit, he never sought Board approval for bringing a legal action, never made any demand on the Board to bring a suit on behalf of the Company, nor has he alleged that such a demand would have been futile, as is required by the New York Limited Liability Company Law. See  Segal v. Cooper, 856 N.Y.S.2d 12 (1st Dept. 2008); Fine v. New York Community Bank, 939 N.Y.S.2d 740 (Queens County 2011); Evans v. Perl, 862 N.Y.S.2d 814 (New York County 2008); Baker v. Andover Associates Management Corp., 924 N.Y.S.2d 307 (Westchester County 2009). Ostroy failed to make any such demand on the Board because, as detailed in the Second Amended Complaint, he has begun to run the Company as if it is the alter-ego of B-O, the Member he controls, and thus as if the Company assets belong to him and him alone. He seeks to join the Company as a party because he believes that he, B-O and the Company are all one and the same, and that the Member and Operating Agreements with ALC are no longer of any force and effect. He seeks to join the Company as a party because he believes that he has a right to have the Company pay his legal fees, even though his actions are clearly in the best interests of himself and his company, Member B-O, and have nothing to do with the best interests of its other Member, ALC, or, therefore, the Company as a whole. Once again, the Defendants have made it clear that the claims involved in this action are direct, not derivative, in nature. This battle is between the two Members - ALC and B-O – and each party – not the Company - should be responsible for its own costs and legal fees.

In light of all of the foregoing, it is clear that the current action should proceed in this Court as pled. B-O has attempted to portray this as a simple procedural issue that should be dealt with by mechanical application of Rule 19 and case law strictly interpreting its provisions. But a Rule 19 analysis is not so rigid. Viewing the circumstances surrounding this action and B-O's

motion to dismiss pragmatically, it is clear that B-O is manipulating the legal aspects of this

dispute in order to advance its own interests. This Court, in equity and good conscience, should

find that the Company is not an indispensible party, and decline to dismiss this suit.


## CONCLUSION

For all of the foregoing reasons, the Plaintiff, American List Counsel, Inc., respectfully

requests that the Court deny the Defendants' Motion to Dismiss Plaintiff's Second Amended

Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (7).


Respectfully submitted,

**TAYLOR, COLICCHIO & SILVERMAN, LLP**
Attorneys for the Plaintiff,
American List Counsel, Inc.

By: _____
Philip M. Colicchio

By: _____
Michael J. Robinson IV

Dated:   December 3, 2012

**TAYLOR, COLICCHIO & SILVERMAN, LLP**
Attorneys at Law
502 Carnegie Center - Suite 103
Princeton, NJ 08540
(609) 987-0022
Attorneys for Plaintiff,
American List Counsel, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| AMERICAN LIST COUNSEL, INC.<br><br>            Plaintiff,<br><br>vs.<br><br>ANDREW OSTROY, and BELARDI-OSTROY,<br>LTD.<br><br>            Defendants. | Civil Action No.: 3:12-CV-03350-FLW-DEA |

**CERTIFICATION OF PETER DEROSA
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND (7)**

PETER DEROSA, of full age, hereby certifies as follows:

1.      I am the Chief Financial Officer of the Plaintiff, American List Counsel, Inc. (hereinafter referred to as "ALC") in the above-captioned matter. As such, I am familiar with the facts set forth herein and the documents attached hereto.

2.      This Certification is submitted in support of ALC's Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (7).

3.     Attached to this Certification as <u>Exhibit 1</u> is a true copy of the November 25-27, 2012 email exchange between Defendant Andrew Ostroy and myself.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: December 3, 2012

_____
Peter DeRosa

# EXHIBIT 1

From: Andy Ostroy [mailto:abostroy@aol.com]
Sent: Tuesday, November 27, 2012 2:20 PM
To: Peter Derosa
Cc: DBelardi@aol.com
Subject: Re: $5k check


Peter, whether counsel has or hasn't been retained by Belardi/Ostroy is obviously
in dispute and is currently the subject of judicial review. It is not a
determination which can or will be unilaterally made by ALC. As such, as it would
have tremendous financial impact on our financials, it is incumbent upon me as
CEO, and you as CFO, and is our fiduciary responsibility, to accrue appropriately
for this cost to the company. As previously discussed and agreed to, I have
determined that $25k/month is a sufficient amount. I need you to follow my
instruction on this matter. If you choose not to, please understand that Donna
and I will hold ALC and you accountable for any harm this inaction causes
Belardi/Ostroy.




Follow us at www.twitter.com/belardiostroy for catalog, retail,
business/economic, non-profit, ecommerce, social marketing insights and more.


  Visit Belardi/Ostroy at www.linkedin.com




-----Original Message-----
From: Peter Derosa <peter.derosa@alc.com>
To: Andy Ostroy <abostroy@aol.com>; Donn Rappaport <donn.rappaport@alc.com>
Cc: DBelardi <DBelardi@aol.com>; Susan Rappaport <susan.rappaport@alc.com>
Sent: Mon, Nov 26, 2012 3:21 pm
Subject: RE: $5k check

Andy,


Now that I have an invoice, I will apply the check against it. We should also
have back up for the client related expenses in which these tickets are used,
from previous years as well as the upcoming dates.

Are there any other checks for company reimbursement that I should expect?

As for accruals, I have no invoices or letters of retention against which you want to set aside funds. Also, to the best of my knowledge, the Company has not engaged counsel.

Thanks

Pete

From: Andy Ostroy [mailto:abostroy@aol.com]
Sent: Sunday, November 25, 2012 9:53 AM
To: Peter Derosa
Cc: DBelardi@aol.com
Subject: Re: $5k check

Peter, you need to explain to me why this check has still not been deposited. It was sent weeks ago.
You also need to confirm that the monthly $25K accrual for legal expense will resume with the November financials and monthly thereafter as instructed.