UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN LIST COUNSEL, INC., | Civil No: 12-3350 (MAS)(DEA) |
| Plaintiff, | **RETURNABLE: DECEMBER 17, 2012** |
| v. | |
| ANDREW OSTROY and BELARDI-OSTROY, LTD., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1)&(7)**

**McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
(973) 993-8100
*Attorneys for Defendants*

Of Counsel and On the Brief:

    Joseph P. LaSala, Esq.

On the Brief:

    James J. DiGiulio, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..............................................iii

PRELIMINARY STATEMENT..............................................1

LEGAL ARGUMENT

    THE COMPANY IS AN INDISPENSABLE PARTY UNDER
    FEDERAL RULE OF CIVIL PROCEDURE 19(b).......................3

    A.    The Company and ALC Are the Only Parties to the
          Support Services Agreement............................3

    B.    Plaintiff's Claims Against the Company's CEO and
          Chairman Are Derivative...............................7

    C.    Plaintiff's Reliance on *Brown v. Brown* is Misguided..10

    D.    No "Special Injury" Has Been Pled in the Second
          Amended Complaint....................................13

    E.    The Superior Court's Dismissal of the State Action
          Merely Deferred Decision of the Indispensable Party
          Question to this Court...............................14

CONCLUSION........................................................15

**TABLE OF AUTHORITIES**

Cases

Ambromovage v. United Mine Workers,
    726 F.2d 972 (3d Cir. 1984) .................................. 5

Bayer v. Beran,
    49 N.Y.S.2d 2 (Sup. Ct. 1944) ............................... 8

Blow v. Stouts Charter Serv., Inc.,
    2008 WL 724249 (D.N.J. Mar. 17, 2008) ....................... 5

Brown v. Brown,
    323 N.J. Super. 30 (App. Div. (1999) .............. 10, 11, 12

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523, 104 S.Ct. 831, 78 L.Ed. 2d 645 (1984) ......... 6

Donahue v. Rodd Electrotype Co. of New England, Inc.,
    367 Mass. 578, 328 N.E.2d 505 (1975) ....................... 11

Edgar v. MITE Corp.,
    457 U.S. 624 (1982) ........................................ 10

Glenn v. Hoteltron Systems, Inc.,
    74 N.Y.2d 386, 547 N.Y.S.2d 816, 547 N.E.2d 71 (1989) .... 8, 9

Graczykowski v. Ramppen,
    101 A.D.2d 978, 477 N.Y.S.2d 454 (1st Dep't. 1984) ......... 10

Higgins v. New York Stock Exch., Inc.,
    10 Misc. 3d 257, 806 N.Y.S.2d 339 (Sup. Ct. 2005) ........... 8

In re Fedders North America, Inc.,
    405 B.R. 527 (D.Del. 2009) ................................. 10

In re Topps Co. S'holders Litig.,
    924 A.2d 951 (Del.Ch. 2007) ................................ 10

Koster v. (Am.) Lumbermens Mut. Cas. Co.,
    330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) ............ 6

Ross v. Bernhard,
    396 U.S. 531, 90 S.Ct. 733, 24 L. Ed. 2d 729 (1970) ......... 6

Shearin v. E.F. Hutton Group, Inc.,
    652 A.2d 578 (Del.Ch. 1994) ............................... 14

Sook Hi Lee v. 401-403 57th St. Realty Corp.,
    306 A.D.2d 108, 759 N.Y.S.2d 873 (1st Dept. 2003) ........... 8

Strasenburgh v. Straubmuller,
    146 N.J. 527 (1996) ..................................... 7, 13

Wolf v. Rand,
    258 A.D.2d 401, 685 N.Y.S.2d 708 (1999) .................... 11

ZB Holdings, Inc. v. White,
    144 F.R.D. 42 (S.D.N.Y. 1992) .............................. 14

Rules

Federal Rule of Civil Procedure 12(b)(1).................... 1, 2

Federal Rule of Civil Procedure 19(a)......................... 1

Federal Rule of Civil Procedure 19(b)............. 2, 3, 4, 9, 15

**PRELIMINARY STATEMENT**

Defendants Andrew Ostroy and Belardi-Ostroy, Ltd. ("Belardi-Ostroy") (collectively, "Defendants") submit this reply memorandum of law in further support of their motion to dismiss plaintiff American List Counsel, Inc.'s ("ALC") Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (7).[1]

The basis for ALC's claims are now undisputed. First, ALC is seeking to enforce the Support Services Agreement between it and the Company. Second, ALC is seeking damages against Andrew Ostroy, the Company's CEO and Chairman of the Board. The claims against Mr. Ostroy seek, *inter alia*: (i) reimbursement to the Company for unapproved expenditures of Mr. Ostroy; (ii) a declaration that Mr. Ostroy was terminated as CEO and Chairman of the Company; and (iii) a finding that the Company does not need to accrue $25,000 per month on it books and records for potential future payments for legal fees arising out of this litigation.

Despite the clear impact of all of this relief on the Company, ALC boldly and without any support contends that the Company is not even a "necessary" party pursuant to Federal Rule

---

[1] Plaintiff filed two briefs in opposition. (D.E. 16 and 17). However, the second filing was after the deadline to file. Accordingly, Defendant does not address any potential alterations or deviations that may exist in the second filing.

1

of Civil Procedure 19(a). Contrary to ALC's bald contentions, the enforceability of the Support Services Agreement, for which the Company is only one of two parties, cannot be adjudicated without the Company. Further, the status of the Company's CEO, and the claims of waste and mismanagement of Company funds, cannot be adjudicated without the Company. The law is clear, the Company is an indispensable party in the litigation of these claims. If the Company is not a named party then the relief sought, if ever entered against Defendants, could not be enforced individually by ALC against Mr. Ostroy, B-O or the Company.

ALC cannot be permitted to simply pursue its personal vendetta against Mr. Ostroy while ignoring the rights of the Company, which include those of the employees[2], and the other officers, directors and members, and wasting Company resources. ALC's attempt to re-cast its third iteration of the complaint as a direct action, despite previously naming the Company as a defendant, is disingenuous and contrary to well-settled law.

---

[2] The presence of the Support Services Agreement, which ALC argues provides it with the unilateral right to choose the healthcare, payroll and retirement services for the Company, directly affects the rights of the Company's employees. The Company terminated the Support Services Agreement to find the best service for the most cost-effective price, in the best interests of the Company and its employees. ALC's attempt to thwart this process demonstrates the need for the Company's voice to be heard.

2

The Company is an indispensable party pursuant to Federal Rule of Civil Procedure 19(b), and this matter should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and (7).

## LEGAL ARGUMENT

### THE COMPANY IS AN INDISPENSABLE PARTY UNDER FEDERAL RULE OF CIVIL PROCEDURE 19(b)

No matter how Plaintiff's claims are labeled, it is clear that the rights being asserted by ALC are those of the Company and no judgment can be entered without the Company's interests being properly represented in this case.

**A.   The Company And ALC Are the Only Parties to the Support Services Agreement.**

Plaintiff's first set of claims seek a ruling that the Company did not properly terminate the Support Services Agreement earlier this year.  It is undisputed that the only parties to the Support Services Agreement are the Company and ALC:

> Support Services.  **ALC agrees that it will supply the Company with the following services**, as to be agreed to with more specificity by the Company and ALC,: [sic] back-end support for list research, accounting/invoices, credit and collections, personnel administration, computer systems, purchasing, information technology, interactive media and general data processing services.  In rendering the support set forth above, the Company's offices will be linked to ALC's corporate computer network for order processing, usage and sales reports, datacards and other related date/information.

3

Article III, Section 3.01 of the Member Agreement (emphasis added). "[A]s consideration for the services to be provided by ALC pursuant to Section 3.01, **the Company shall pay** ALC fifteen percent (15%) of its commission income. All payments due to ALC pursuant to this Section 3.03 shall be made monthly." *See* D.E. 8-1 at 2-3 (emphasis added).

The Company is not only a necessary party to determine the enforceability of the Support Services Agreement, but indispensable as it is the only counterparty to the Agreement.[3] Indeed, all of the factors set forth in Federal Rule of Civil Procedure 19(b) militate a finding that the Company is an indispensable party to these claims.

First, a judgment cannot be rendered that determines the viability of the Support Services Agreement without all of the parties to the agreement being part of the lawsuit. ALC cannot be permitted to unilaterally litigate whether this contract with the Company was properly terminated. Indeed, the Company has an absolute right to attack ALC's conflict of interest in this regard.

Second, any such decision would not be enforceable because the Company was not permitted to litigate its rights. Indeed,

---

[3] Plaintiff actually takes the outlandish position that the Company is not even a necessary party under Rule 19(a). *See* Pb. at 8.

4

there is not even presently a derivative claim sufficient to protect the Company's rights. Finally, ALC will not be prejudiced because it has the right to pursue these claims in the Superior Court of New Jersey, as agreed to in the Forum Selection Clause. It is without a doubt that any relief entered in this case related to the Support Services Agreement will directly impact the Company.[4]

To support its tenuous position to the contrary, ALC contends that when "the interests of the partners are nearly indistinguishable from those of the partnership, joinder of the partnership is not necessary." Plaintiffs' Opposition Brief (D.E. 16) ("Pb.") at 20. Plaintiff claims that this reasoning, as dictated by the unreported cases from other jurisdictions cited by Plaintiff, should be applied herein. However, the cases cited are not binding and inapplicable. For instance, in *HB General Corp. v. Manchester Partners, L.P.*, the Court found that a partnership was not an indispensable party in a partner

---

[4] ALC's failure to address why it originally sued the Company and then withdrew such claims is telling. In their moving papers, Defendants unequivocally stated that the only reason ALC dropped the Company as a named Defendant was to salvage diversity. Db. at 1. This was not denied or even addressed in Plaintiff's opposition papers. It is clear that ALC withdrew its claims against the Company to improperly "manufacture federal jurisdiction where it is otherwise foreclosed." *Ambromovage v. United Mine Workers*, 726 F.2d 972, 990 (3d Cir. 1984); *Blow v. Stouts Charter Serv., Inc.*, 08-298-MLC, 2008 WL 724249 (D.N.J. Mar. 17, 2008) (*citing DeBiasse v. Chevy Chase Bank Corp.*, 144 Fed.Appx. 245, 247 (3d Cir. 2005), *cert. denied*, 546 U.S. 1093, 126 S.Ct. 1051, 163 L.Ed.2d 859 (2006)).

5

dispute because partnerships are routinely treated differently than companies. 95 F.3d 1185, 1996 (3d Cir. 1996) ("Unlike partnerships, the corporation's status as a distinct jural entity is deeply rooted in our law…a clear rule for joinder may be uniquely appropriate for the corporation context… Partnerships lack consistent entity-treatment, and, at least for small partnerships, the determination of whether the partners' interests align with those of the partnership is not difficult.")

Here, Belardi/Ostroy ALC is not a partnership, but a company where the members chose to be governed by a corporate structure. Therefore, Plaintiff's citation to an unreported case involving partnerships is not a sufficient reason to ignore the Supreme Court precedent holding that a company is an indispensable party when its rights are at stake. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L. Ed. 2d 729 (1970) ("The claim pressed by the stockholder against directors or third parties is not his own but the corporation's"); *see also Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 523 n. 2, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (stating that "the corporation is an indispensable party"); *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 528-29, 104 S.Ct. 831, 834-35, 78 L.Ed. 2d 645 (1984)(" . . . a derivative suit is one founded on a right of action existing in the corporation itself, and in which the

6

corporation itself is the appropriate plaintiff . . . [and a stockholder] brings suit on a cause of action derived from the corporation.").

In this case, the claims arising out of the Support Services Agreement are either on behalf of the Company, or need to be defended by way of a derivative claim.  This factual situation is exactly the kind of derivative action that *Ross* and its progeny contemplate.  To hold otherwise would eviscerate the rights of the Company as a separate and distinct corporate entity.  Accordingly, because ALC's claims seeking to keep the Support Services Agreement alive are derivative in nature, the Company is an indispensable party and this Court lacks diversity jurisdiction.

### B. Plaintiff's Claims Against the Company's CEO and Chairman Are Derivative.

Plaintiff's second set of claims are for waste and mismanagement against the Company's CEO and Chairman, Mr. Ostroy.  The New Jersey Supreme Court has unequivocally held that such "[c]laims of waste…will always be derivative claims." *Strasenburgh v. Straubmuller*, 146 N.J. 527, 551 (1996). Moreover, "[c]laims of breach of fiduciary duty on the part of directors will also be generally regarded as derivative claims unless the injury to shares is distinct."  *Strasenburgh*, 146 N.J. at 551-52 (1996).

7

New York law is the same. A derivative action is "the only civil remedy that stockholders have for breach of fiduciary duty on the part of those entrusted with the management and direction of their corporations." *Bayer v. Beran*, 49 N.Y.S.2d 2, 4 (Sup. Ct. 1944). Indeed, "[u]nder New York law, a shareholder lacks standing to pursue a direct cause of action to redress wrongs suffered by the corporation; rather such claims must be asserted derivatively, for the benefit of the corporation." *Higgins v. New York Stock Exch., Inc.*, 10 Misc. 3d 257, 264, 806 N.Y.S.2d 339, 347 (Sup. Ct. 2005) (citing *Abrams v. Donati*, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 489 N.E.2d 751 (1985) app. denied 67 N.Y.2d 758, 500 N.Y.S.2d 1028, 490 N.E.2d 1234 (1986)). Therefore, "claims alleging waste and mismanagement on the part of the board of directors" are derivative. *Sook Hi Lee v. 401-403 57th St. Realty Corp.*, 306 A.D.2d 108, 109, 759 N.Y.S.2d 873 (1st Dept. 2003). "Moreover, diversion of a corporate opportunity gives rise to a derivative action only." *Glenn v. Hoteltron Systems, Inc.*, 74 N.Y.2d 386, 393, 547 N.Y.S.2d 816, 547 N.E.2d 71 (1989).

The basis for Plaintiff's claims against Mr. Ostroy are that he has "begun to run the Company as if it is the alter-ego of B-O…and thus as if the Company assets belong to him and him alone." *See* Pb. at 25 (emphasis added). By way of example, ALC is seeking to have Mr. Ostroy reimburse the Company for

"unapproved expenditures" and seeks a declaration that Mr. Ostroy was terminated as CEO and Chairman of the Company. *Ibid*. Plaintiff's newest theory of liability, that Mr. Ostroy is seeking to have the Company pay for his legal defense, further corroborate the necessity of the Company as a named party:

> Ostroy has been engaged in a series of email exchanges with ALC Chief Financial Officer Peter DeRosa, who acts in the same capacity for the Company, where he has demanded DeRosa being accruing $25,000 a month for the payment of legal fees for this action.

*See* Pb. at 24; see also Exhibit 1 to the Certification of Peter DeRosa.[5] The $25,000 per month sought to be accrued are from Company funds – not ALC's.

If any of this relief is eventually entered against Mr. Ostroy, ALC, individually, will have no standing to enforce it. Accordingly, the claims of breach of fiduciary duty and loyalty against Mr. Ostroy are necessarily derivative in nature, rendering the Company an indispensable party under Federal Rule of Civil Procedure 19(b).

---

[5] Plaintiff's submission of an excerpted email was improper because Defendants' motion to dismiss is based solely on the pleadings. Typically, Defendants would seek to have the Court disregard this email. However, such a request is unnecessary because there is nothing in the email that shows Mr. Ostroy seeking payments for his own personal legal expenses. Instead, the email simply shows the CEO deciding to accrue certain expenses on the Company's books and records in order to prevent potential future harm – a prudent accounting practice. Accordingly, the email further illustrates why the Company is an indispensable party.

### C. **Plaintiff's Reliance on *Brown v. Brown* is Misguided.**

Plaintiff relies heavily on *Brown v. Brown*, 323 N.J. Super. 30, 36 (App. Div. 1999), for the proposition that the instant matter is a direct, rather than derivative action. Plaintiff's reliance on *Brown* not only misses the mark, but confirms the fact that the Company is an indispensable party.

As a threshold matter, New York law and not New Jersey law, governs the right of ALC as a shareholder to bring a direct action against another shareholder, director and officer of the Company. The "generally accepted choice-of-law rule with respect to such 'internal affairs' as the relationship between shareholders and directors is to apply the law of the place of incorporation." *Graczykowski v. Ramppen*, 101 A.D.2d 978, 979, 477 N.Y.S.2d 454, 456 (1st Dep't. 1984) (quoting *Zion v. Kurtz*, 50 N.Y.2d 92, 100, 428 N.Y.S.2d 199, 405 N.E.2d 681 (Ct. App. 1980)); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (same); *In re Fedders North America, Inc.*, 405 B.R. 527, 539 (D.Del. 2009) (same); *In re Topps Co. S'holders Litig.*, 924 A.2d 951 (Del.Ch. 2007) (same).

New York Courts do not distinguish between corporations and closely-held corporations in this context:

> Even where the corporation is closely held, and the defendants might share in the award, the claims belong to the corporation, and damages are awarded to the corporation rather than directly to the derivative

10

> plaintiff. The purpose of the rule is to prevent impairment of the rights of creditors of the corporation whose claims may be superior to those of the innocent shareholder.

*Wolf v. Rand*, 258 A.D.2d 401, 403, 685 N.Y.S.2d 708, 710 (1999). Therefore, *Brown* cannot be used to ignore applicable New York law to the contrary.

Second, the holding in *Brown* was that Mrs. Brown, a former shareholder, had standing to bring a <u>derivative</u> claim for breach of the duty of loyalty and mismanagement against the Chief Operating Officer of the Company. *Brown*, 323 N.J. Super. at 32-33. Indeed, in *Brown*, the company, Brown Roofing Company, Inc., was a named party. Therefore, the holding of *Brown* supports a finding that the Company is an indispensable party and the claims against Mr. Ostroy are derivative in nature for which ALC has no standing to bring directly.

Third, *Brown* underscores the notion that, unlike other courts, New Jersey Courts will not blindly treat derivative actions like direct actions where closely held corporations are involved. *Id.* at 37 ("We do not subscribe to the plaintiff's contention that we should follow the Massachusetts Supreme Judicial Court's reasoning in *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 328 N.E.2d 505 (1975), and invariably treat what would otherwise be derivative actions as direct actions whenever a closely held corporation is

11

involved."). Therefore, Plaintiff's attempt to invoke a blanket rule that litigation between members of a closely-held company should always be treated as a direct action has already been squarely rejected by New Jersey Courts.

Finally, *Brown* is about standing, not indispensability or whether a case is a direct or derivative action. In *Brown*, Appellant-Wife brought a derivative action against a company's chief operating officer, alleging diversion of corporate opportunities. Appellant then transferred all her shares to her ex-husband, Respondent and the other 50% shareholder, during their divorce settlement. Respondent moved for summary judgment on the basis that his ex-wife did not have standing to pursue the action because she was no longer a shareholder. On appeal, the Appellate Division reversed the Superior Court and found that Appellant could continue her action despite transferring her shares. Thus, the Court ultimately held "that it would be a mistaken exercise of discretion to dismiss the case on standing grounds." *Id.* at 39.

The only applicable lesson from *Brown* is that, unlike in other jurisdictions, New Jersey Courts are not required to recognize direct actions where closely held corporations are involved. As such, because ALC's claims are undeniably on behalf of the Company, the Court should recognize this matter as a derivative action for which the Company should be named.

12

### D. No "Special Injury" Has Been Pled in the Second Amended Complaint.

Despite filing three different complaints in this case, Plaintiff has never alleged a "special injury" sufficient to bring a direct claim. Instead, in its opposition papers, without any specificity or citation to the record, Plaintiff alleges it has suffered some "special injury." Pb. at 16.[6]

ALC claims that "B-O seeks to gain additional compensation from, and control over, the Company" and this constitutes "special injury" because it unequally harms ALC. However, ALC does not cite a single case to support that allegation. This is likely because such a case does not exist. Indeed, this alleged "additional compensation" to B-O would merely be in the form of a distribution to all shareholders. ALC would be entitled to 50% of these distributions. There is nothing unique or special about such a distribution.[7]

Plaintiff has not established a "special injury" as defined in *Strasenburgh v. Straubmuller*, 146 N.J. 527 (1996): "a wrong not suffered by all of the shareholders or a wrong involving a

---

[6] Plaintiff does not provide the Court with one citation to the Second Amended Complaint to demonstrate that a "special injury" has been pled.

[7] The fact that ALC – in its role as a vendor of the Company - has a blatant conflict of interest and will lose its fee because the Company properly terminated the Support Services Agreement cannot create a "special injury" in its capacity as a shareholder.

13

contractual right of the shareholders." ALC has not alleged any injury that does not equally affect all members. Plaintiffs' claims are merely breach of fiduciary duty claims, which are regarded as derivative claims. *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 591 (Del.Ch. 1994) ("A claim for corporate waste is classically derivative."); *see also ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 45 (S.D.N.Y. 1992) (dismissing action alleging harm to closely-held company where company was not named as a party). The lack of a "special injury" herein makes clear that the Company is the real party in interest and Plaintiff is merely acting on the Company's behalf.

### E. The Superior Court's Dismissal of the State Action Merely Deferred Decision of the Indispensable Party Question to this Court.

On October 1, 2012, the Honorable Darlene Pereksta, J.S.C., dismissed the State Action, without prejudice, pending a determination by this Court as to its own subject-matter jurisdiction.[8]

The Court explicitly stated "if the Federal Court disagrees with that I'm assuming [this dispute] will be sent back to state court." *See* Certification of Joseph P. LaSala, Esq. ("LaSala

---

[8] The Superior Court's decision rests solely on the holding in *Brown v. Brown*. However, ALC did not raise its theory based on *Brown v. Brown* until it filed its reply papers with the State Court. Therefore, Defendants were not given an opportunity during the State Action to demonstrate that *Brown v. Brown* is inapplicable.

14

Cert.") (D.E. 13-2), Exhibit B at T2:16-18. By granting the motion to dismiss, without prejudice, Judge Pereksta invited this Court to determine if the Company is a necessary party. *Id.* at T7:24-8:3 ("if the Federal Court in some way finds that they cannot hear this case for whatever reasons, [then] Plaintiffs would not be prejudiced in that they would then be able to bring this action in State Court.").

It is clear that Judge Pereksta's decision constitutes a deferral to this Court regarding its jurisdiction, rather than a judgment on the merits and this matter should be returned to State Court. Accordingly, the Superior Court's decision does not affect the indispensable party analysis under Federal Rule of Civil Procedure 19(b).

## CONCLUSION

Based upon the foregoing, and Defendants' moving papers, it is respectfully submitted that the Company is an "indispensable party" as defined by Federal Rule of Civil Procedure 19(b), and Defendants' motion to dismiss Plaintiff's Second Amended Complaint should be granted.

Respectfully submitted,
MCELROY, DEUTSCH, MULVANEY & CARPENTER LLP

*/s/ Joseph P. LaSala*
Joseph P. LaSala

Dated: December 10, 2012

15