<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN LIST COUNSEL, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ANDREW OSTROY and BELARDI- : <br> OSTROY, LTD., : <br> : <br> Defendants. : | Civil Action No. 12-3350 (MAS) (DEA) |

<u>SHIPP, District Judge</u>

This matter comes before the Court upon Defendants Andrew Ostroy and Belardi-Ostroy, Ltd.'s (collectively "Defendants"), Motion to Dismiss Plaintiff American List Counsel, Inc.'s ("Plaintiff" or "ALC"), Second Amended Complaint. (Defs.' Mot., ECF No. 13.) Plaintiff filed Opposition to Defendants' Motion. (Pl.'s Opp'n Br., ECF No. 16.) Defendants filed a Reply. (Defs.' Reply, ECF No. 18.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendants' Motion is granted.

**I.   <u>Background</u>**

    **A.   Factual Summary**

ALC is a New Jersey corporation with its principal place of business in Princeton, New Jersey. (2d Am. Compl. ¶ 4, ECF No. 8.) Individual Defendant, Andrew Ostroy ("Ostroy"), is a New York citizen. (*Id*. ¶ 6.) Defendant, Belardi-Ostroy, Ltd. ("B-O"), is a New York corporation. (*Id*. ¶ 8.) B-O is equally owned by Ostroy and his business partner, Donna Belardi, a

New York citizen. (*Id.* ¶ 9.) ALC and B-O are co-owners of Belardi/Ostroy ALC, LLC ("the Company"), each holding a 50% interest in the Company. (*Id.* ¶¶ 18, 24.)

ALC and B-O formed the Company in December 1997 as a New York limited liability company in the business of direct marketing. (*Id.* ¶ 29.) On December 19, 1997, B-O and ALC, the only members of the Company, entered into Operating and Member Agreements. (*Id.* ¶¶ 29, 30, 37.) Article III, Section 3.01 of the Member Agreement (the "Support Services Provision") states:

> <u>Support Services</u>. ALC agrees that it will supply the Company with the following services, as to be agreed to with more specificity by the Company and ALC,: [sic] back-end support for list research, accounting/invoicing, credit and collections, personnel administration, computer systems, purchasing, information technology, interactive media and general data processing services. In rendering the support set forth above, the Company's offices will be linked to ALC's corporate computer network for order processing, usage and sales reports, datacards and other related data/information.

(2d Am. Compl., Ex. A at 2.)

Section 3.03 of the Member Agreement states, "as consideration for the services to be provided by ALC pursuant to Section 3.01, the Company shall pay ALC fifteen percent (15%) of its commission income. All payments due to ALC pursuant to this Section 3.03 shall be made monthly." (*Id.* at 3.) Section 12.02 of the Member Agreement provides that the Member Agreement "shall terminate upon the written agreement of the parties to terminate the Agreement." (*Id.* at 13.)

According to the Complaint, during a December 14, 2011 Member and Board Meeting, Ostroy announced that he had decided to "terminate the support services agreement" between the Company and ALC. (2d Am. Compl. ¶ 100.) Ostroy then proceeded to effectuate the termination over the objections of ALC. (*Id.* ¶¶ 101, 110-19.)

On July 10, 2012, at the Board of Directors meeting, ALC proposed to add a management performance review of Ostroy to the meeting agenda. (*Id.* ¶ 124.) As a result, Ostroy and Belardi physically removed themselves from the meeting. (*Id.* ¶ 125.) In their absence, ALC continued the meeting in accordance with the New York Limited Liability Act, and engaged in a financial and managerial performance review of Ostroy. (*Id.* ¶ 128.) At the conclusion of the meeting, Ostroy was terminated as Chief Executive Officer and Chairman of the Board of the Company. (*Id.* ¶ 129.) Ostroy has refused to recognize his termination. (*Id.* ¶ 130.)

### B.     Procedural History

Section 12.03 of the Member Agreement provides a forum selection clause as follows:

> <u>Jurisdiction and Venue.</u> For any legal action or proceeding with respect to this Agreement, the parties hereto expressly submit themselves to the Federal courts of the United States of America for the District of New Jersey and, if for any reason the Federal courts of the United States of America for the District of New Jersey will not or cannot hear any such action or proceeding, the Federal courts of the United States of America for the Southern District of New York and, if for any reason the Federal courts of the United States of America for the Southern District of New York will not or cannot hear any such action or proceeding the Superior Court of New Jersey sitting in the County of Mercer . . . .

(2d Am. Compl., Ex. 1, at 13-14.)

Plaintiff filed three Complaints in the present case. Plaintiff's initial Complaint included the Company as a Defendant and alleged breaches of the Member and Operating Agreements by the Company, B-O, and Ostroy. ALC sought to: (1) permanently restrain the Company from entering into or terminating any contracts on behalf of the Company without the express approval of the Company's Board of Directors; (2) compel the performance of all of their obligations under the Operating Agreement; (3) specifically enforce and permanently compel the performance of all of their obligations under the Member Agreement; (4) permanently restrain

and enjoin the Defendants from further dissipation of corporate funds; and (5) receive compensatory damages, costs and fees, and any other relief the Court deems just. (*Id*. ¶ 133.)

Count Two alleged breaches of fiduciary duties by Ostroy. Plaintiff sought to: (1) enjoin the Defendants from continued dissipation of corporate funds; (2) declare that Ostroy has breached his fiduciary duties owed to ALC; (3) compel Ostroy and B-O to reimburse the Company for the unapproved expenses; and (4) recover various damages. (*Id*. ¶ 144.)

On June 12, 2012, Plaintiff amended the Complaint to omit the Company as a named defendant. (ECF No. 4.) However, the same allegations and relief sought were contained in the Amended Complaint. On September 6, 2012, Plaintiff filed a Second Amended Complaint. (ECF No. 8.) The factual allegations in the Second Amended Complaint remained unaltered, but ALC added a third count regarding the termination of Ostroy as the Company's Chief Executive Officer and Chairman of the Board of Directors. (*Id*. ¶¶ 158-59.) Plaintiff added this count because Ostroy was allegedly terminated at the Company's Board meeting on July 10, 2012. (*Id*. ¶¶ 155-58.)

On June 6, 2012, two days after ALC filed the Initial Complaint, Defendant B-O filed a declaratory action, individually and derivatively on behalf of the Company, in the Superior Court of New Jersey, Mercer County (the "State Court Action"). (Defs.' Mot., Ex. A, ECF No. 13-3.) ALC filed a motion to dismiss the State Court Action pursuant to the Forum Selection Clause. On October 1, 2012, the Honorable Darlene Pereksta, J.S.C., dismissed the State Court Action, without prejudice. (*Id.*, Ex. B.) Judge Pereksta found that the Complaint was a direct shareholder action and concluded that it was not necessary to join the Company to the suit. (*Id.*) As such, the court found that diversity of citizenship existed and the matter belonged in the District of New Jersey pursuant to the Forum Selection Clause. (*Id.*)

Defendants now move to dismiss for lack of subject-matter jurisdiction and for failure to join an indispensable party pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and (7). (Defs.' Mot.)

## II. <u>Legal Standard & Analysis</u>

Rule 12(b)(7) provides that a party may move to dismiss for failure to join a party under Rule 19. Rule 19 determines whether a non-joined party is indispensable and, as such, must be joined in the action. If the party is necessary and indispensible to the action and joinder would deprive the court of subject matter jurisdiction, the court must dismiss the complaint. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993). In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 805 (3d Cir. 2003). The moving party must demonstrate that a non-moving party is both necessary and indispensable to the action. *Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, No. 07-1257 (JLL), 2007 WL 3349320, at *3 (D.N.J. Nov. 9, 2007).

In performing a Rule 19 analysis, a court must first determine whether the non-joined party should be joined according to the Rule 19(a) standard. *Gen. Refractories Co. v. First Sale Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If a party should be joined but it is not feasible because it would defeat diversity of citizenship, the Court must then determine whether the non-joined party is indispensable pursuant to Rule 19(b). *Id.* If the non-joined party is both necessary and indispensable, the action cannot proceed. *Id.* (citing *Janney Montgomery Scott, Inc.*, 11 F.3d at 404).

A.    **Parties' Positions**

Defendants argue that ALC has no standing to bring its claims directly. According to Defendants, although the Company is a closely held LLC, it remains a separate and distinct legal entity. Due to the derivative nature of this action, the Company will be severely prejudiced if the relief requested is entered without the Company named as a party. Defendants additionally argue that the Forum Selection Clause should not be considered by the Court because it only relates to personal jurisdiction as opposed to subject matter jurisdiction.

Defendants assert that the claims and relief sought in the Second Amended Complaint render the Company a "necessary" party under Rule 19(a). However, because the Company (an LLC) is a citizen of both New York and New Jersey, its joinder will destroy diversity. Defendants also argue that because joinder of the Company is not feasible, the Court must engage in a four factor analysis pursuant to Rule 19(b). Due to the derivative nature of the action, and because any judgment rendered would not be directly binding on the Company, Defendants allege that precedent requires the Court to conclude that the Company is an indispensable party. Therefore, Defendants assert that the action must be dismissed pursuant to Rule 12(b)(7).

According to Defendants, the claims of waste against Ostroy are derivative. In addition, the only two parties to the Support Services Agreement were the Company and ALC; therefore, the Company is indispensable. Defendants contend that New York law, and not New Jersey law, governs the right of ALC as a shareholder to bring a direct action. Further, because New York courts do not distinguish between corporations and closely held companies in this context, Defendants argue that the claims brought by ALC belong to the Company. Moreover, it is Defendants' position that Plaintiff failed to plead special injury in the Second Amended

Complaint and that the state court's dismissal of the action without prejudice merely deferred the indispensable party question to this Court.

On the other hand, Plaintiff argues that the Court has the discretion to treat the action as a direct action. Plaintiff asserts that the current dispute is between the only two shareholders of the Company over the Member Agreement and control of the Company. According to Plaintiff, pleading this matter as a direct action properly reflects the true relationship and nature of the dispute between the Plaintiff and Defendants. Furthermore, Plaintiff asserts that a direct action is proper because it suffered special injury.

Plaintiff further asserts that Defendants seek to void the Support Services Provision of the Member Agreement, not a separate Support Services Agreement. This decision cannot be made on behalf of both members of the Company because, if successful, it harms one of the shareholders and not the other. In addition, Plaintiff argues that it continues to suffer a special injury because of the actions taken by Defendants to unilaterally make decisions for the Company without ALC's consent.

Plaintiff argues that the Company is not a necessary or indispensable party. It is Plaintiff's position that because this is a direct action and because the Company's interests are the same as the Parties' interests, the Company is not a necessary or indispensable party to the suit pursuant to Rules 19 (a) and (b). Rather, Plaintiff asserts that the Defendants are trying to use corporate formalities to avoid this forum and that the application of a Rule 19 analysis is fact-sensitive and must be made in "equity and good conscience."

**B.** **Discussion**

1. Federal Rule of Civil Procedure 19(a)

Federal Rule of Civil Procedure 19(a)(1) provides that:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may:
    (i) as a practical matter impair or impede the person's ability to protect the interest; or
    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, the Company clearly has an interest in this case. The obligation to utilize ALC's support services, one of the items that forms the basis of ALC's suit, was an obligation of the Company. Moreover, the alleged breaches of fiduciary duty also belong, at the very least in part, to the Company. Therefore, if feasible, joinder of the Company is required under Rule 19(a).

2. Federal Rule of Civil Procedure 19(b)

Joinder in this case is not feasible because joinder of the Company as a defendant would deprive this Court of subject matter jurisdiction by destroying complete diversity. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), based on diversity of citizenship and the amount in controversy. Since diversity jurisdiction requires complete diversity between plaintiffs and defendants, the Court must proceed to the second part of the Rule 19 analysis and determine whether the Company is indispensible pursuant to Rule 19(b).

Rule 19(b) provides that when a required party if feasible cannot be joined:

the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

8

(1) The extent to which a judgment rendered in the person's absence might prejudice that person or existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
   (A) protective provisions in the judgment;
   (B) shaping the relief; or
   (C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

In *HB General Corporation v. Manchester Partners, L.P.*, the Third Circuit discussed the Rule 19(b) framework. 95 F.3d 1185 (3d Cir. 1996). A Court must first determine the interests of those affected by the litigation pursuant to state law. *Id.* at 1195 (citations omitted). The *HB General Corp.* court noted that, "[o]f course, the state-law characterization of an action as derivative or on behalf of another might affect joinder via Rule 17." *Id.* at 1196. Once the court determines the interests, "federal law governs the balancing of interests in determining indispensability." *Id.* at 1195 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968)). The *HB General Corp.* court also addressed the distinction between partnerships and corporations. The court stated:

> We recognize that the Supreme Court has stated, in the corporations context, that the corporation is an indispensable party in stockholder derivative actions. If meant as a general rule, this statement is in tension with the Court's admonitions that "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation," and that "[t]here is no prescribed formula for determining in every case whether a person . . . is an indispensable party."

*Id.* at 1196 (internal citations omitted).

In the present case, the Parties failed to provide thorough arguments regarding choice of law. The early pleadings in particular provided scant discussion of the issue.[1] Defendants'

---

[1] In addition, neither Party discussed the conflict between sections of the Member Agreement and Operating Agreement. Paragraph 12.16 of the Member Agreement provides that the Agreement shall be governed by and construed and enforced in accordance with the laws of the

moving brief acknowledged the provision in the Member Agreement that the Agreement "shall be construed and governed by the laws of the State of New Jersey." (Def.'s Mot. 4.) In addition, Defendants discussed a number of cases from different jurisdictions. However, Defendants did not reference choice of law. Similarly, Plaintiff's opposition brief did not reference choice of law. Rather, Plaintiff responded to the arguments raised by Defendants in their moving brief.

Defendants first raised the issue of New York law in their reply brief, asserting:

> As a threshold matter, New York law and not New Jersey law, governs the right of ALC as a shareholder to bring a direct action against another shareholder, director and officer of the Company. The generally accepted choice-of-law rule with respect to such internal affairs as the relationship between shareholders and directors is to apply the law of the place of incorporation.

(Defs.' Reply Br. 10) (internal citations and quotations omitted).

Following review of Defendants' reply papers, Plaintiff filed correspondence stating that Defendants raised the issue of New York law for the first time in their reply brief. (Pl.'s Dec. 11, 2012 Ltr., ECF No. 19.) As such, Plaintiff requested leave to file a short sur-reply brief. (*Id.*) The Court granted leave for same. In its sur-reply brief, Plaintiff appears to assert that New Jersey law should apply. According to Plaintiff:

> Though the Defendants attempt to apply the strictures of old and outdated corporate precedent to the Company (a limited liability company that bears little resemblance to the large business structures that precedent was intended to govern), the flexible and pragmatic approach set forth in *Brown v. Brown*, 323

---

State of New Jersey. (2d Am. Compl., Ex. A., at 16.) Paragraph 12.13 of the Member Agreement provides that in the event that any of the terms of the Member Agreement conflicts with the terms of the Operating Agreement, the terms of the Member Agreement will control. (*Id.*) The Operating Agreement provides that "[t]he parties have agreed to organize and operate a limited liability company in accordance with the provisions of the 'New York Limited Liability Company Act.'" (2d Am. Compl., Ex. B, at 1.) Paragraph 9.5 of the Operating Agreement states that '[a]ll questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of New York." (*Id.* at 25.) Finally, the Second Amended Complaint in the present case alleges numerous violations of New York law.

> N.J. Super. 30 (App. Div. 1999) is the more equitable and legally sound method for classifying this action.
>
> . . . .
>
> Moreover, in their Reply Memorandum the Defendants attempt to avoid the fact that New Jersey law does not support treating this action as a derivative action brought by a shareholder of a corporation against the corporation itself by now, for the first time, asserting that New York law applies to ALC's causes of action and that, under New York law, Defendants' arguments prevail. First, it is telling that the Defendants did not cite a single New York case in the original Brief they filed in support of their Motion, so this new approach is clearly taken in recognition of the fact that the Motion must fail under New Jersey law (as correctly determined by Judge Pereksta in the Defendants' New Jersey Superior Court action).

(Pl.'s Sur-Reply 2-3, ECF No. 21.)

Nevertheless, Plaintiff argues that the Court should reach the same outcome regardless of whether New Jersey or New York law is applied. (*Id.* at 3.) Similarly, the Defendants argue that the Court should reach the same outcome regardless of which state's law is applied. (Defs.' Reply Br. 12.)

New Jersey and New York law differ in this context. Interpreting New Jersey law, courts have found that:

> [t]he difficulties which unavoidably arise in attempting to apply corporate norms to the close corporation have led to the development of substantial authority permitting departure from these norms and recognition instead of the real relationships of the principals. New Jersey has thus long accepted the view, as stated in *Whitfield v. Kern* . . . that the conception of a legal entity distinct from the persons composing the corporation is to be disregarded, in equity, in cases not within the reason and policy of this legal fiction, e.g., to adjust equities among members of the corporation internally where the rights of the public or third persons are in no wise involved.

*68th St. Apts., Inc. v. Lauricella*, 142 N.J. Super. 546, 558 (App. Div. 1976) (internal quotations and citation omitted.)

Plaintiff in the present case and Judge Pereksta, the Superior Court judge who dismissed Defendant's declaratory judgment action without prejudice, both heavily relied on *Brown v. Brown*, 323 N.J. Super. 30 (App. Div. 1999). In *Brown*, the court cited Section 7.01(d) of ALI's Principals of Corporate Governance: Analysis and Recommendations (1992), which provides:

> In the case of a closely held corporation . . . the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of the creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Id.* at 36 (emphasis omitted). The Court continued:

> Comment (e) to § 7.01 recognizes that as to closely-held corporations, the normal policy reasons for requiring a plaintiff to employ the form of the derivative action may not be present or will be less weighty, even though the action alleges in substance a corporate injury. The comment recognizes that the concept of a corporate injury that is distinct from any injury to the shareholders approaches the fictional in the case of a firm with only a handful of shareholders. . . . We do not subscribe to the . . . contention that we should . . . invariably treat what would otherwise be derivative actions as direct actions whenever a closely held corporation is involved. We are, however, persuaded that the flexible approach of § 7.01(d), with due consideration to the factors set forth therein, is the appropriate standard. As comment (e) explains,
>
>> Although § 7.01(d) does not . . . convert[] all intracorporate disputes that would be normally characterized as derivative actions into direct actions whenever the case involves a closely held corporation, it gives the court discretion to treat the action as direct if the policy considerations enumerated in Comment d are satisfied. In general, when a direct action is brought on behalf of the entire class of injured shareholders and the corporation's solvency is not in question, there is less reason to insist that the action be brought derivatively. The court should then have equitable power to treat the action as direct if the corporation is closely held, thereby avoiding procedural hurdles that were not designed to apply in such a case.

*Id.* at 36-38 (internal citations and quotations omitted)

As such, New Jersey law permits courts to take a flexible approach in determining whether to couch an action as direct or derivative in the context of closely held corporations. On the other hand, New York law appears to require a more exacting consideration of the direct versus derivative nature of a plaintiff's claims. *See Ceribelli v. Elghanayan*, 990 F.2d 62, 63-64 (2d Cir. 1993). Defendants in the present case cite *Wolf v. Rand* for the proposition that "[e]ven where the corporation is closely held, and the defendants might share in the award, the claims belong to the corporation, and damages are awarded to the corporation rather than directly to the derivative plaintiff." (Def.'s Reply Br. 10-11 (citing 258 A.D.2d 401, 403 (N.Y. 1999)).

The Court finds *Weidberg v. Barnett* instructive in its discussion of derivative and direct claims. 752 F. Supp. 2d 301 (E.D.N.Y. 2010). In the case, plaintiff Weidberg and defendant Barnett formed Iron Horse Bicycle Co. in 2001. *Id.* at 303. Both agreed to $250,000 personal guarantees of the company, which were later increased to $750,000 personal guarantees. *Id.* Barnett managed the day-to-day operations of the business. *Id.* Weidberg alleged that he became aware of financial mismanagement of the company and a scheme to inflate the company's value after he reviewed the company's financial statements in January 2008. *Id.* at 304. In May 2008, plaintiff, defendant and the company entered into an agreement in which defendant sold back his stake in the company to the plaintiff for cancellation of a promissory note. *Id.* The May 2008 Agreement also included other provisions, including defendant's agreement to loan additional cash to the company. *Id.* The company continued to struggle financially and filed for bankruptcy protection. *Id.* After the company filed for bankruptcy, the plaintiff filed suit, which alleged that the defendant mismanaged the company for a number of years. *Id.* The suit's claims included: (1) breach of fiduciary duties against Barnett, the former 50% stockholder/manager; and

(2) breach of the May 23, 2008 Agreement based on Barnett's failure to make certain loans to the Company. *Id.* at 304-05.

In reaching its decision, the *Weidberg* court stated that "the pivotal issue affecting the validity of [the plaintiff's] claims is whether [the plaintiff's] causes of action are direct or derivative." 752 F. Supp. 2d 301, 306-07 (E.D.N.Y. 2010). The court stated:

> Since fiduciary duties are owed both to an LLC and its members, a court must apply the "direct injury test" to discern whether a breach of these duties gives rise to a claim that may be asserted directly by an LLC member, or that must be asserted on behalf of the LLC. Explaining this test, the Second Circuit has held that the critical question posed by the direct injury test is whether the damages a plaintiff sustains are derivative of an injury to a third party. If so, then the injury is indirect; if not, it is direct.

*Id.* at 307 (internal citations and quotations omitted).

The *Weidberg* court found that the breach of fiduciary duty claim, which included allegations that the defendants breached their fiduciary duties by taking improper cash payments from distributors, diverting funds and otherwise looting the company, properly belonged to the company. *Id.* at 308. According to the court, "[t]his is a quintessentially derivative claim." *Id.* Consequently, the court granted summary judgment to defendants without leave to replead. *Id.* The court also found the breach of contract claim to be a derivative cause of action. *Id.* The *Weidberg* court stated:

> As for the plaintiff's breach of contract claim . . . the Court finds that this is also a derivative cause of action, and that amendment of this claim would be futile. While it is true that the plaintiff is a signatory to the contract that Barnett is alleged to have breached, the duty that Barnett is accused of failing to perform was owed to Iron Horse, not to Weidberg. Specifically, the contract required Barnett to make certain loans to Iron Horse, which Barnett never made. Any harm suffered by Weidberg as a result of this non-performance was derivative of the harm caused to Iron Horse. Thus, Weidberg may not assert his breach of contract claim directly against Barnett, and the Court grants Barnett's motion for summary judgment dismissing the plaintiff's breach of contract cause of action for lack of standing.

*Id.* at 309.

Here, the Court finds that the Company is an indispensible party regardless of the characterization of ALC's claims. Similar to the breach of fiduciary duties claim in *Weidberg*, many of the claims asserted by ALC are also "quintessentially derivative" and belong to the Company. However, ALC's claim for breach of the Support Services Provision of the Member Agreement is not nearly as clear cut as Defendants attempt to assert. According to the Complaint, ALC would not have entered into the Member Agreement with Belardi-Ostroy absent the Support Services Provision of the Member Agreement. Unlike *Weidberg*, where the harm that flowed from the breach of contract was derivative in nature because the contract required the defendant to make certain loans to the company, the Member Agreement in the present case specifically requires the Company to retain ALC for support services. As such, the harm that flows from the breach of this provision is a harm that arguably flows to ALC, as opposed to the Company as a whole.

Nevertheless, regardless of the characterization of the breach of Support Services Provision as direct or derivative, the Court finds that the action must be dismissed. In other words, even though ALC may have direct claims against B-O and Ostroy in addition to derivative claims, a careful consideration of the Rule 19(b) factors in the present case still leads the Court to conclude that the action must be dismissed. The Support Services Provision clearly states that "ALC agrees that it will supply the *Company* with the following services, as to be agreed to with more specificity by the *Company* and ALC." (2d Am. Compl., Ex. A, § 3.01) (emphasis added). In addition, the relief requested in Plaintiff's Second Amended Complaint includes:

15

>C.   Permanently restraining and enjoining the Defendants from entering into or terminating any contracts on behalf of the Company without the express approval of the Company Board of Directors; [and]
>
>D.   Permanently restraining and enjoining the Defendants from further dissipation of corporate funds[.]

(2d Am. Compl. 25.)

>C.   Compelling Andrew Ostroy and Belardi-Ostroy, Ltd. (and its owners, including Donna Belardi) to reimburse the Company for all compensation paid and expenses taken which were not approved by the Board of Directors[.]

(2d Am. Compl. 28.)

>B.   Declaring that Andrew Ostroy was lawfully and properly removed as Chairman of the Board at the July 10, 2012 Company Member Meeting;
>
>C.   Declaring that Andrew Ostroy was lawfully and properly removed as Chief Executive of the Company at the July 10, 2012 Member Meeting;
>
>D.   Compelling Andrew Ostroy to honor the Member Agreement and Operating Agreement in his capacity as Managing Member and Director of the Company; [and]
>
>E.   Enjoining Andrew Ostroy from exercising any authority he had in his former positions at the Company.

(2d Am. Compl. 29.)

In the present case, ALC requests extensive relief, including declaratory and injunctive relief that could deeply impact the overall functioning of the Company. Even if the Court analogizes the closely-held LLC in this case to a partnership, it would reach the same conclusion. Based on the nature and extent of relief requested by ALC, it does not appear that that Court could shape the relief to lessen or avoid prejudice. In *HB General Corporation v. Manchester Partners*, the Third Circuit stated:

>Although a partnership's interests can only be known through the medium of human beings, the choice of *which* human being(s) will represent the partnership's interests may have practical effects. Thus, if there is a conflict

>between interests of the partnership and those of the partners sufficient to require the partnership, if it is joined, to be represented by its own attorney, the failure to join the partnership would cause it real prejudice. In such a case, joinder of the partnership would do more than change the name of the caption, but would provide the partnership with the practical benefit of having an advocate wholly devoted to its own interests. Here there are no allegations that the Partnership's interests in this case so diverge from those of the partners that it should be represented by its own attorney.

95 F.3d at 1193 n.3.

Unlike *HB General Corporation*, the present matter constitutes a case in which the interests of the members sufficiently diverge such that the Company should be joined. ALC alleges that Ostroy wants to buy out the Company for less than its value. (2d Am. Compl. ¶¶ 106-07.) On the other hand, Ostroy asserts that the ALC Support Services provision of the Member Agreement constitutes an illegal contract into perpetuity. (Def. Mot. 8.) This does not appear to be a case in which the Company's interests would be adequately represented by B-O/Ostroy and/or ALC. Even though the Company admittedly consists of two primary members, the absence of the Company from this action could practically impair its ability to protect its interests. As such, it appears that a judgment rendered in the absence of the Company would be inadequate. In addition, ALC would have an adequate remedy if the action were dismissed for non-joinder as the Member Agreement provides that the action may be brought in state court.

In light of "Rule's 19's pragmatic approach" and "guided by common sense," the Court finds that the Company is an indispensible party in this case. ALC argues that "[v]iewing the circumstances surrounding this action and B-O's motion to dismiss pragmatically, it is clear that B-O is manipulating the legal aspects of this dispute in order to advance its own interests." (Pl.'s Opp'n Br. 25-26.) However, the Court finds that the pragmatic approach in the present case was represented by ALC's initial complaint, which at the very least implicitly recognized the

importance of the Company to the present action. Although ALC later dropped the Company from the complaint, its subsequent iterations of the Complaint requested similar relief to the original complaint. Here, after carefully weighing the Rule 19(b) factors and viewing the circumstances surrounding this action pragmatically, the Court concludes that ALC identified the indispensible party, the Company, in the first instance.

Since the Company is both a necessary and indispensable party in the present matter, and diversity jurisdiction requires complete diversity between plaintiffs and defendants, the Court must grant Defendants' motion to dismiss.

### III.     Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motion to Dismiss is granted.  An Order consistent with this Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated:  July 31, 2013